## CIRCUIT COURT OF THE CITY OF RICHMOND

Lois Marshall, Administratrix
of the Estate of Jack E. Marshall

v.

City of Richmond et al.

February 22, 1988

Case No. LL-2883-3

By JUDGE T. J. MARKOW

This case is before the court on demurrer to a motion for judgment in which plaintiff claims that her decedent was robbed and murdered by one of the originally named defendants, Marvin M. Mundy. She alleges that Mundy was sentenced to serve six months in the Richmond City jail but that he was prematurely negligently released by Sheriff Winston's employee, Deputy Sheriff Troublefield.

Plaintiff alleges that nine days after Mundy's premature release, he was arrested and again placed in the custody of the Sheriff and his deputy. Five hours after his arrest, plaintiff claims that "the jail, through its agents, officers or employees" Winston and Troublefield again "negligently, unlawfully and with wanton disregard for the safety of the general public prematurely released Marvin M. Mundy from their custody . . . ." About one month later, the murder was committed.

Plaintiff claims that had the defendants not prematurely released Mundy, he would not have killed her decedent. She claims actual damages for the allegedly negligent conduct and punitive damages for that conduct she claims could have been "wanton, reckless and unlawful."

No service was obtained on defendants Stafford and Watkins. Plaintiff has suffered a nonsuit as to defendants

City of Richmond and Mundy. On demurrer Winston and Troublefield claim sovereign and judicial immunity, that they breached no duty owed to plaintiff's decedent, and that their wrongdoing, if any, could not have been the proximate cause of the injuries plaintiff claims.

The threshold issue is whether defendants Winston and Troublefield owed any duty to the decedent. If so, then the issues of proximate cause, judicial and sovereign immunities must be addressed; if not, these issues do not need to be addressed. The precise question is whether the Sheriff, as the City "jailer," owes a duty of due care to a member of the general public. For purposes of consideration of this issue, the court will assume negligent release of Mundy by Troublefield.

The court is of opinion that while the Sheriff owes the public certain specified duties, he owes no duty to protect a particular member of the general public from harm, unless the facts create a special relationship between the Sheriff and that member of the public or the class to which he belongs. For example, if the decedent had been the spouse of Mundy and he had been convicted for brutally beating her and had been heard to threaten that he would kill her when he got out, then perhaps, the Sheriff would owe some duty to that wife to assure that the two were separated. Not even that proposition is clear but is closer than are the facts of this case, as no special circumstances are plead.

From the pleadings, the decedent was a member of the general public with no specific connection to or relationship with either Mundy or the Sheriff (hereafter the term Sheriff shall include both defendants). There is no allegation that Mundy had a propensity to harm the decedent or even a particular class of persons to which the decedent belonged and that the Sheriff knew or should have known of such propensities.

The reason for a special relationship is clear. No person, including public officials, can be expected to owe a duty to the entire world. To establish liability, one must owe a duty, must violate that duty and thereby cause injury. *Trimyer v. Norfolk Tallow Co.,* 192 Va. 776, 780, 66 S.E.2d 441, 443 (1951). The policy behind tort law is not simply to compensate injured persons but is to promote proper conduct; *i.e.,* require persons

to conduct themselves with reasonable care. Reasonable care cannot exist in a vacuum; it is fact specific and must be measured by a specific duty owed to a specific person or class of persons. If an actor cannot ascertain the person or persons to whom he owes a duty, he cannot conform his conduct to the standard of reasonable care.

Other reasons against imposing an obligation to the public at large have been advanced. As to parole officers, they would be subjected to unlimited lawsuits which would be a disincentive to serve. The decision-making process itself would be affected. *See Orzechowski v. State*, 485 A.2d 545, 548 (R.I. 1984), and *Donahoo v. State*, 479 So.2d 1188 (Ala. 1985); *Williams v. State*, 308 N.Y. 548, 127 N.E.2d 545 (1955). Similar arguments apply to the conduct of the Sheriff. He should not be subjected to claims from any member of the public who might be affected by anything he does or fails to do.

The Supreme Court of Virginia has held that absent a "special relationship," a landlord owed no duty to protect his tenant from the criminal conduct of third persons. *Klingbeil Management Group Co. v. Vito*, 233 Va. 445, 357 S.E.2d 200 (1987). The Sheriff and the decedent are even farther removed from such a "special relationship" than are landlord and tenant.

There is authority to the contrary. *See Grimm v. Arizona Board of Pardons and Paroles*, 564 P.2d 1227 (Ariz. 1977), which held that the parole board could be liable to a member of the general public who was injured by a prisoner upon his release. While saluting the principle that a public official is not liable to a member of the general public for breach of one's official duty except where a "special duty" has been assumed, the Arizona court, following the Restatement, Second of Torts § 319, declared that the special duty has been assumed by the Board's taking charge of a person having "dangerous tendencies." This court does not believe that the Supreme Court of Virginia has ever tended toward imposing any such rule to the supervision, custody or control of prisoners, even ones with dangerous propensities in the absence of the "special relationship" between the custodian and the victims. At a minimum, the "special relationship" would arise when the Sheriff possesses knowledge of a danger to a specific person or definable class of people

who, by the use of due care, could foreseeably protect. No facts such as these are suggested here.

The Fourth Circuit has held that a probation officer and a psychiatrist who knew of the dangerous propensities of a person under their care and custody were liable for a death caused a member of the general public while the man was on unauthorized release. *Semler v Psychiatric Institute of Washington, D.C.*, 538 F.2d 121 (D.C. Cir. 1976). In *Semler* the court relied upon the court's order of confinement which it interpreted as imposing upon the defendants the special duty to the decedent and the public generally. Nothing in this motion for judgment indicates that the court order imposed such a duty on the Sheriff. The pleadings simply state that Mundy "was sentenced to a term of imprisonment of six (6) months by the General District Court of the City of Richmond, Virginia."

It cannot be determined that such an order had as its purpose the protection of the general public by isolating Mundy. Generally, it is not for the court to determine the purpose of the incarceration. That is a legislative policy that includes many purposes, including rehabilitation, deterrence, retribution, isolation, or some combination thereof. Public debate still rages over which is the proper purpose of incarceration. This court cannot say as a matter of law that Mundy was incarcerated to protect the public from a dangerous person. To the contrary, it would seem that if he had such dangerous propensities, he would have been sentenced for a period of longer than six months.

No facts creating the "special duty" or "special relationship" which could impose liability on the Sheriff have been pled. Accordingly, the demurrer will be sustained.

The court will permit the plaintiff fifteen days from the date of this letter within which to amend. The defendants may respond within fifteen days after any amended pleading is filed.

Serious questions regarding proximate cause, sovereign and judicial immunity remain but should not be addressed, as this court's action on the issue of breach of duty is dispositive of this motion for judgment.